# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-789V
(not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| CHEREE ROACH and JASON ROACH, *<br>*on behalf of their minor child*, I.R., * | * | Chief Special Master Corcoran |
| Petitioners, * | * | Filed: March 10, 2022 |
| v. * | * | |
| SECRETARY OF HEALTH *<br>AND HUMAN SERVICES, * | * | |
| Respondent. * | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Andrew D. Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioners.

*Matthew Murphy*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS[1]

On June 29, 2020, Cheree and Jason Roach, on behalf of their minor son, I.R., filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] alleging that the measles, mumps, and rubella ("MMR") vaccine I.R. received on March 5, 2019, caused him to develop Pediatric Autoimmune Neuropsychiatric Disorder ("PANS") and/or Tourette syndrome. Pet. at 1 (ECF No. 1).

---

[1] Although I have not formally designated this Decision for publication, it will nevertheless be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

The case was initially before a different special master, but reassigned to me on August 25, 2021 (a little more than one year after its initiation). Order, dated Aug. 25, 2021 (ECF No. 26). I then ordered Petitioners to show cause by mid-January 2022 as to why their case should not be dismissed, because the theory that PANS could be vaccine-induced had never met with success in the Vaccine Program. Scheduling Order, dated Sept. 27, 2021 (ECF No. 29). Petitioners missed that deadline, and upon my Order to file their overdue brief (ECF No. 31), they instead filed a Motion for Decision to Dismiss Petition. Motion, dated Jan. 27, 2022 (ECF No. 32). I granted the relief requested and terminated the claim. Decision, Jan. 31, 2022 (ECF No. 33).

Petitioners have now filed a motion for a final award of attorney's fees and costs. Motion, dated Feb. 3, 2022 (ECF No. 35) ("Final Fees Mot."). Petitioners requests a total of $19,823.37 in attorney's fees and costs ($19,305.50 in fees plus $517.87 in costs) for the work of two attorneys, Mr. Andrew Downing and Ms. Courtney Van Cott, and two paralegals, based on work performed on the matter from November 2019 to the date of filing. Final Fees Mot. at 4–6. Petitioners then filed a Supplemental Motion for Attorney Fees and Costs. Motion, dated Feb. 24, 2022 (ECF No. 40) ("Supp. Fees Mot."). This increased the attorney's fees by $1,922.50 (to account for work performed in defending the request for fees) with the total fees amount now requested being $21,745.87. Supp. Fees Mot. at 1.

Respondent opposed the fees request on February 17, 2022. *See* Response, Feb. 17, 2022 (ECF No. 38) ("Response"). Respondent contends that Petitioners have failed to establish a reasonable basis for their claim, and are thus not entitled to a discretionary award of fees and costs. *Id.* at 1. Petitioners reacted to Respondent's objection on February 24, 2022, arguing that Respondent did not properly apply the reasonable basis standard. *See* Reply, dated Feb. 24, 2022 (ECF No. 39) ("Reply").

For the reasons set forth below, I hereby **GRANT** Petitioners' motion in part, awarding fees and costs in the total amount of **$15,739.98**.

## ANALYSIS

**I.     Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to *successful* petitioners, a special master *may* also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Importantly, fees are not a given for unsuccessful petitioners. Establishing reasonable basis is merely a *prerequisite* to a fees award, and hence a finding of reasonable basis does not automatically entitle a claimant whose petition

2

was dismissed to fees.

I have in prior decisions discussed the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim* itself—counsel's conduct in prosecuting the claim is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, because cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[3]

Petitioners in this case requested dismissal prior to filing of an expert report in favor of their claim. As far as the litigation goes, they were on some notice of the claim's potential deficiencies at the time Respondent filed the Rule 4(c) Report. Report, dated May 14, 2021 (ECF No. 22). In particular, Respondent noted that I.R. "was diagnosed with autism spectrum disorder, EoE, and ADHD prior to the subject vaccination, "and certain alleged post-vaccination symptoms were not fully corroborated in the record. *Id.* at 13; Ex. 12 at 5. Further, the records did not reveal that I.R. had ever been diagnosed with PANS by any treaters. *Id.* Respondent otherwise raised issues with the connection between these alleged injuries and the MMR vaccine, with no medical theory to support this claim. *Id.* at 14–15.

---

[3] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

Petitioners have made a number of arguments to defend the claim's reasonable basis. They maintain, for example, that medical charts pertaining to I.R. from the morning after the vaccine indicated that he "began constantly twitching on his head and face. He suddenly had facial tics and his head was moving a lot." Final Fees Mot. at 2; Ex. 1. These facts are derived from Mrs. Roach's witness statement. Final Fees Mot. at 2–3; Ex. 1. Mrs. Roach further states that she called I.R.'s doctor about the issues, but was told they likely reflected an adverse reaction that would disappear soon. Final Fees Mot. at 3; Ex. 1. Three days post-vaccination, Mrs. Roach sought treatment for I.R. at LaTouche Pediatrics, reporting that he was displaying a "head twitch after MMR vaccine." Final Fees Mot. at 3; Ex. 2 at 12. The problem had not improved seven months later, when I.R. was evaluated by a neurologist, and Mrs. Roach continued to report observing a change post-vaccination. Final Fees Mot. at 4; Ex. 12 at 5. Thus, Petitioners maintain, there is record support for some potential association between the vaccine and I.R.'s symptoms. Final Fees Mot. at 4.

Respondent, by contrast, questions whether any of this evidence establishes reasonable basis. Response at 9. Respondent notes again the lack of corroborated diagnosis from medical professionals. *Id.* While Petitioners *themselves* noted tics and facial movements four times over a two-year course of treatments, none have been demonstrated to have been observed by medical professionals. *Id.*; Ex. 2 at 10, 12–13; Ex. 3 at 20; Ex. 10 at 204. Indeed, a sleep language pathologist had seventeen one-hour sessions with I.R., but never observed any movements or tics. Response at 9; Ex. 10 at 157, 168, 170, 181, 190, 192, 194, 196, 198, 200, 202, 204, 206, 208, 210, 212, 214. Thus, had I.R. actually been experiencing such tics, they likely would have been observed. Response at 9. And no treating physicians identified the vaccine as a possible cause. *Id.* at 10.

Respondent's arguments are deserving of weight, as the overall record is largely unsupportive of Petitioners' claim. Had they succeeded in obtaining an expert, it is highly unlikely Petitioners would have been able to carry their burden of proof in this case. However, the standard for reasonable basis is not the same as the evidentiary standard required to prevail in a Vaccine Program case. And here, there is the barest scintilla of evidence to support the claim. Thus, there is record corroboration of Petitioner's complaints about I.R.'s reaction to the MMR vaccine to pediatric treaters, close in time to when they were allegedly observed. Ex. 2 at 13. While it is the case that claimants cannot succeed with a vaccine injury petition based solely on their testimony, a witness's factual assertions about symptoms or other observed illness-related conduct are relevant to numerous issues, and deserve some degree of weight. *Kirby v. Sec'y of Health & Hum. Servs.*, No. 2020-2064, 997 F.3d 1378, 1382–83 (Fed. Cir. 2021). Even if Petitioners' reports of a reaction ultimately were not confirmed by treaters, this does not prevent the conclusion that they *occurred*—and hence were some objective grounds for the claim.

Although it is regrettable that such a weak case went forward to the extent it did, I cannot

find that it was self-evident from the start that no facts existed to support it, and therefore deem reasonable basis satisfied, under the lenient standard for evaluating it. However, as discussed below, I *will* limit the fees awarded, since it is otherwise my conclusion that this case was needlessly pursued, despite numerous warning signs along the way that it would fail.

## II. Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method— "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioners request the following rates for their attorneys, based on the years work was performed:

|  | **2019** | **2020** | **2021** | **2022** |
|---|---|---|---|---|
| **Andrew Downing (Attorney)** | $385.00 | $385.00 | $385.00 | $415.00 |
| **Courtney Van Cott (Attorney)** | - | $275.00 | $275.00 | $325.00 |
| **Paralegals** | $135.00 | $135.00 | $135.00 | $135.00 |

ECF No. 35-1 at 21.

Mr. Downing and Ms. Van Cott practice in Phoenix, Arizona—a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Perekotiy, on behalf of her minor child, S.K. v. Sec'y of Health & Hum. Servs.*, No. 16-997V, 2020 WL 6395509, at *2–3 (Fed. Cl. Spec. Mstr. Sept. 29, 2020). The rates requested for Mr. Downing and Ms. Van Cott are also consistent with what has previously been awarded them in accordance with the Office of Special Masters' fee schedule.[4] *Amber Bob v. Sec'y of Health & Hum. Servs.*, No. 20-931V, 2022 WL 457376, at *10 (Fed. Cl. Spec. Mstr. Jan. 25, 2022) (granting the rates for 2020 and 2021). The rates for 2022 are also consistent with the fee schedule and number of years each attorney has practiced. I thus find no cause to reduce them in this instance. I also deem the time devoted to the matter reasonable (subject to the reductions discussed below).

### III.     Reduction of Fees

Although I have found that sufficient reasonable basis existed for a fees award in this case, I am not constrained by that finding to thereupon award *all* fees requested. As noted, the Act *never* guarantees fees to unsuccessful claimants, and special masters are always obligated only to award fees *reasonably* incurred. 42 U.S.C. § 300aa-15(e)(1). Moreover, special masters may reduce fees by percentage amounts, and need not review billing invoices line by line, since doing so unnecessarily renders the determination of fee awards into a mini proceeding subsumed within the greater entitlement determination. *Hensley v. Eckerhart*, 461 U.S. at 434 (1983); *Wasson v. Sec'y of Health & Hum. Servs.*, No. 90-208V, 24 Cl. Ct. 482, 484 (1991).

Here, it is reasonable and appropriate to reduce the fees to be awarded. As I noted to Petitioners in September 2021, claims that PANS could be vaccine-caused have not resulted in favorable determinations. Scheduling Order, dated Sept. 27, 2021, at 1 (ECF No. 29), *citing Castaneda v. Sec'y of Health & Hum. Servs.*, No. 15-1066V, 2020 WL 3833076 (Fed. Cl. Spec. Mstr. May 18, 2020) (PANS/Tourette syndrome after receipt of Pentacel, MMR, Hepatitis A, and pneumococcal vaccines), *mot. for review den'd,* 152 Fed. Cl. 576 (2020); *Heath v. Sec'y of Health & Hum. Servs.,* No. 19-0749V, 2020 WL 1486840 (Fed. Cl. Spec. Mstr. Feb. 19, 2020) (PANS/autoimmune encephalitis after Tdap vaccine); *Reape v. Sec'y of Health & Hum. Servs.*, No. 15-1146V, 2017 WL 1246325, at *2 (Fed. Cl. Spec. Mstr. Mar. 3, 2017) (PANS/Tourette syndrome after flu vaccine). Petitioners have not identified any contrary recent determinations.

Importantly, all of these PANS decisions were issued *before* this case was even filed, suggesting some degree of notice to counsel of the claim's inherent weaknesses from the outset. Yet (as the billing invoices reveal), counsel had already been at work on the matter since November 2019, billing (by my admittedly rough calculation) $7,000 by the time the petitioner was initiated. *See* Billing Invoices, dated February 3, 2022, filed as Ex. A (ECF No. 35-1). Those same invoices

---

[4] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

establish that medical records had also been reviewed in detail in advance of filing. Ex. A at 4 (attorney Van Cott devoting five hours and ten minutes on April 7, 2020, to "substantive review of medical records"). Surely the deficiencies identified in the case by Respondent (which are, to be honest, replete in the medical record) could have at least partially been uncovered in the seven months counsel took to prepare the matter for filing. And yet the claim persisted after filing for another 19 months before dismissal was requested—and in that time $12,000.00 more in attorney's fees were incurred.

Counsel acted appropriately in promptly seeking dismissal when expert support for the claim could not be obtained. Yet it is reasonable to expect *more* from experienced Program counsel, like those involved in this matter. Many kinds of vaccine claims (for example, those asserting autism as an injury) have now been demonstrated to be unviable, and therefore they should not be asserted simply because an individual petitioner fervently believes a vaccine was injurious, and can offer enough objective support to satisfy reasonable basis. While consenting to the claim's dismissal did help limit the fees ultimately incurred in the matter, it did nothing about the fees wasted to that point in the claim's prosecution.

When the record convincingly suggests that a claim was highly unlikely to prevail, and it appears that counsel had several "off ramp" opportunities to end the case before its initiation but did not, the fees incurred in the claim's prosecution are not reasonable—and it is fair for a special master to reduce the amount to be awarded. As a result, and in the exercise of my discretion, I shall reduce the fees to be awarded by an across-the-board percentage reduction of **30 percent**— meaning the amount to be awarded will be $15,222.11. This reduction is eminently fair under the circumstances; should present counsel bring another PANS injury claim that is similarly lacking in evidentiary support, the reduction will be far more severe.

## IV.   Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

7

Petitioner seeks $517.87 in outstanding costs, including medical record retrieval costs. ECF No. 35-1 at 22–27. The medical records retrieval costs and other requested costs in this matter appear reasonable, and they shall be awarded in full without reduction.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs, and award a total of **$15,739.98** reflecting $15,222.11 in attorney's fees and $517.87 in costs in the form of a check made jointly payable to Petitioners and their attorney, Mr. Andrew Downing.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[5]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran<br>
Brian H. Corcoran<br>
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.